UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ANTHONY M.,

               Plaintiff,

  v.

NANCY A. BERRYHILL, Deputy Commissioner of Social Security for Operations

               Defendant.

Case No. 2:17-cv-01691-TLF

ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of the Commissioner's denial of his application for supplement security income ("SSI") benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that the decision to deny benefits should be reversed and that this matter should be remanded to the Commissioner for an award of benefits.

FACTUAL AND PROCEDURAL HISTORY

On May 9, 2014, plaintiff filed an application for SSI benefits, alleging he became disabled beginning February 1, 2014. Dkt. 6, Administrative Record (AR) 15. His application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before

an administrative law judge (ALJ) on October 28, 2015, at which plaintiff appeared and testified as did a vocational expert. AR 31-50. The ALJ held a supplemental hearing on May 18, 2016 at which medical expert, Robert Pelc, Ph.D., appeared and testified. AR 51-74. Plaintiff did not appear, but his counsel was present at this supplemental hearing. *Id.*

In a decision dated June 15, 2016, the ALJ determined that plaintiff was not disabled. *Id.* at 15-26. The Commissioner employs a five-step sequential disability evaluation process in determining whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *Id.* Step one considers whether the claimant is engaged in "substantial gainful activity." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013) (citing C.F.R. § 416.920(a)(4)). Step two considers "the severity of the claimant's impairments. *Id.* If the claimant is found to have a severe impairment, step three considers "whether the claimant's impairment or combination of impairments meets or equals a listing under 20 C.F.R. pt. 404, subpt. P, app. 1." *Id.* "If so, the claimant is considered disabled and benefits are awarded, ending the inquiry." *Id.* If not, the claimant's residual functional capacity ("RFC") is considered at step four in determining whether the claimant can still do his or her past relevant work and, if necessary, at step five "make an adjustment to other work." *Id.*

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since plaintiff's application date. *Id.* at 17. At step two, the ALJ found plaintiff had the following severe impairments: an anxiety-related disorder, an affective disorder, and a substance addiction disorder. *Id.* At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.* at 18. The ALJ next considered plaintiff's RFC, finding at step four that he did

not have any past relevant work, but that at step five he could perform other jobs existing in significant numbers in the national economy, and therefore plaintiff was not disabled. AR 25-26.

Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council, making that decision the Commissioner's final decision; plaintiff appealed on November 9, 2017. AR 3; Dkt. 1; 20 C.F.R. § 416.1481.

For the reasons set forth below, the Court holds the ALJ erred in evaluating the medical and other opinion evidence, in assessing plaintiff's credibility, and in rejecting the lay witness evidence from plaintiff's grandmother, and thus in assessing plaintiff's RFC and in finding him to be disabled at step five. The Court therefore reverses the ALJ's decision and remands this matter to the Commissioner for an award of benefits.

## DISCUSSION

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, arguing the ALJ erred:

    (1)    in evaluating plaintiff's impairments at step two;

    (2)    in evaluating the medical and other opinion evidence in the record;

    (3)    in assessing the credibility of plaintiff's testimony;

    (4)    in rejecting the lay witness evidence from plaintiff's grandmother;

    (5)    in assessing plaintiff's RFC;

    (6)    in finding plaintiff not disabled at step five;

    (7)    plaintiff also argues the ALJ failed to afford him due process during the supplemental hearing.

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). This requires "'more than a mere scintilla,'" though "'less than a preponderance'" of the evidence. *Id.* (quoting *Desrosiers*, 846 F.2d at 576). The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

If more than one rational interpretation can be drawn from the evidence, then the Court must uphold the ALJ's interpretation. *Orn v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)). The Court, however, may not affirm by locating a quantum of supporting evidence and ignoring the non-supporting evidence. *Orn,* 495 F.3d at 630.

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports, and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

I.  The ALJ's Evaluation of the Medical and Other Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations,

"the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is

brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149.

### A. Medical Expert Robert Pelc, Ph.D.

The medical expert Robert Pelc, Ph.D., testified that plaintiff would "be capable of performing simple, repetitive tasks, that did not require extended time for learning of those tasks, maybe 30, 45 days," but that "[t]he data is less clear in terms of how well he would handle more detailed or complex tasks," and so he would not be able to offer an opinion about his capabilities in that area. AR 65. In terms of social functioning, Dr. Pelc testified that when his irritability or anxiety increases, plaintiff's interactions with the public, co-workers, and supervisors would "be at a marked level" of impairment. *Id.* at 66. Dr. Pelc testified that when plaintiff is at that marked level of impairment, he would have "inappropriate interactions with supervisors or co-workers," and "certainly with the general public." *Id.* at 67.

Dr. Pelc further testified, however, that when such increases in irritability or anxiety are not occurring or not "more prominent," then plaintiff's impairment would be "at a moderate level and [he] would at least be able to interact occasionally with those three groups." *Id.* at 66. At those times, plaintiff also "would be able to deal with changes in simple, repetitive types of work," as well as "work that had no more than occasional interactions with others." AR 67. Dr. Pelc also testified that he could not provide an opinion regarding frequency of increases in plaintiff's irritability or anxiety. *Id.* at 66-67.

The ALJ gave "great weight" to Dr. Pelc's testimony that plaintiff would have ability to adapt to changes in simple, repetitive types of work and work that involved only occasional interactions with others, because Dr. Pelc "reviewed the evidence at the hearing level, and his opinion is consistent with the record as a whole." AR 24. In so finding, the ALJ pointed to Dr. Pelc's testimony that plaintiff's "weekly presence at a bar during the relevant period suggested more of a moderate limitation" in the area of social functioning. *Id.*

The ALJ erred in giving great weight to Dr. Pelc's testimony, because the ALJ made assumptions about the nature, frequency, and extent of plaintiff's presence at the bar that are unsupported in the record. During the supplemental hearing, the ALJ inquired of Dr. Pelc:

> So one thing that sort of struck me in this record was how often [plaintiff] was going to this bar during the -- during his testimony and then during this [Cooperative Disability Investigations Unit] CDIU investigation where he said that he could go to this place everybody knew him and so he felt comfortable there but it's still a very public place where people are drinking and getting rowdy and having a good time generally. So, someone with the conditions, the impairments that [plaintiff] has and the limitations that he has, how do you see that fitting in?

*Id.* at 67-68. In response, Dr. Pelc testified:

> Well, in addition to his attendance, . . . unfortunately, there's not really good, clear data about the frequency with which he was actually, not just going there, but actually working there. I did note that he was describing, you know, the amounts of money that he was making for a one-night stand of working at that location. To the extent that that was a frequent and ongoing behavior, then I would say that would weigh more towards his having no more than the moderate limitation in terms of that social domain and, again, you know, he reports different things at different times. With the investigation report, he says he's working at this bar, you know, for almost an entire year and, if that's true, and if he's going there on a regular basis, again, I would put him as having no more than moderate limitation. I think he would still have some problems with his irritability and also some problems with his anxiety but, if that's the case where he was going there on a frequent or regular basis for up to a year during much of the time since his alleged date, then I would not put him into that marked category.

AR 68-69.

As plaintiff points out, however, the ALJ did not ask questions about the bar's environment, the frequency with which plaintiff went or worked there, and the nature of plaintiff's social interactions while at the bar. For example, at the initial hearing plaintiff testified that for a period of time he had been training as a bartender at three different bars. *Id.* at 36-37. However, the ALJ did not inquire about the work environment, what exactly plaintiff did while at those bars, or how often he worked at those bars to train as a bartender. *Id.*

In the CDIU investigation, the investigator reported that plaintiff said he worked "for half of 2014 and half of 2015" as a bartender "making cash." *Id.* at 575, 578. Plaintiff also said "he made really good money and he would bring home 250-400 dollars a night in tips." *Id.* at 578. No evidence suggests how many nights plaintiff worked each week or month (e.g., several times a week or once per month), the type of bar involved (e.g., many or only a few customers), the number of hours he worked each night (e.g., several or one), or the specific tasks he had to perform.

The CDIU investigator further notes that:

> According to [plaintiff], he can go to the Union Bar because he knows almost everyone there. [Plaintiff] said it is like his safe place and everyone there knows he has a panic issue and they will talk with him and they look out for him. [Plaintiff] said sometimes after he has been drinking he would go outside the bar and just start yelling because of the intense feelings he has inside his body and mind. [Plaintiff] said the bar patrons do not make fun of him and he is able to walk to and from the bar. [Plaintiff] noted he only goes to the bar 4-5 times a month. [Plaintiff] said he went once last week. [Plaintiff] said he goes when he just has to get out of the house.

*Id.* at 579.

The ALJ found that plaintiff went to a bar four to five times a month, and relied on this as evidence that plaintiff's symptoms and limitations are not as severe as alleged. AR 23. But as the CDIU investigation report reveals, the bar was a "safe place" for the plaintiff, where the patrons

knew him. The fact that plaintiff would go there on average one time per week and only in order to just "get out of the house," is not substantial evidence of an ability to interact appropriately with the general public or with others with whom he is not familiar.

### B. Licensed Mental Health Counselor (LMHC) Eric Clarke

In May 2016, one of plaintiff's mental health therapists, Eric Clarke LMHC, evaluated plaintiff, opining that he had a severe impairment (defined as "Significant disruption OR Failure in functioning") in terms of social withdrawal, and a marked impairment (defined as "Obvious impairment OR Inadequate functioning") in the areas of: negative social behavior, response to stress, sustained attention, and anxiety symptoms. AR 698. Plaintiff argues the ALJ erred by not addressing this opinion evidence in his decision.

The Commissioner argues the ALJ was "not required to discuss evidence that is neither significant nor probative." Dkt. 15, p. 14 (quoting *Howard ex re. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003)). Yet the opinions of medical and other sources such as clinical social workers "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Social Security Ruling ("SSR") 06-03p, 2006 WL 2329939, at *3.

Mr. Clarke provided an opinion on specific areas of functioning based on his evaluation of plaintiff at the time. This was significant probative evidence the ALJ was required to address. The ALJ's failure to do so constitutes reversible error.

### C. Examining Psychologist David Widlan, Ph.D.

David Widlan, Ph.D., performed a psychological evaluation of plaintiff in March 2014, opining that he was markedly limited in his ability to understand, remember, and persist in tasks by following detailed instructions, adapt to changes in a routine work setting, communicate and

perform effectively in a work setting, and complete a normal workday and workweek. AR 291.

The ALJ gave the following reasons for rejecting Dr. Widlan's opinion:

> Dr. Widlan received no records. He completed a check box form with little explanation for his opinion. The claimant reported to Dr. Widlan that he was last employed in 2013 for a few days at a time through temp agencies. However, as discussed below, the claimant reported that he worked for half of 2014 and half of 2015 as a bartender. He also was seen in the ER in March 2014 for an "anxiety attack" at work. Thus, it appears likely that the claimant was working around the time of this evaluation. The claimant reported no history of substance abuse to Dr. Widlan. However, as noted above, the claimant was diagnosed with alcohol withdrawal in January 2014. Thus, it appears that the claimant was not entirely forthcoming with Dr. Widlan, which undermines the reliability of Dr. Widlan's conclusions.

AR 20 (internal citations omitted).

The Court agrees with plaintiff that these reasons were insufficient for rejecting Dr. Widlan's opinion. First, there is no requirement that Dr. Widlan, who conducted his own evaluation of plaintiff, was required to review other records. Second, as discussed further below the majority of the treatment records support Dr. Widlan's opinion. Third, the mere fact that an opinion is provided on a "check box" form is not itself sufficient to reject a physician's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 (9th Cir. 2014) (use of a check-the-box form is not a valid reason for rejecting treating physicians' opinions; forms did not stand alone, but reflected and were consistent with the claimant's treatment records).

The record fails to show the nature and extent of plaintiff's work efforts in 2014 and 2015. As for the anxiety attack plaintiff suffered at work requiring him to be seen in the emergency room, this would tend to support the findings of Dr. Widlan. And, even though plaintiff's report of having no history of substance abuse may be inconsistent with the contemporaneous record. (*see* AR 285, 297), and thus he may not have been entirely forthcoming on this issue, the ALJ fails to explain how this calls into question Dr. Widlan's

overall opinion. The ALJ assigned no particular limitation to plaintiff's substance abuse, and appears not to have placed much importance on it in terms of its impact on plaintiff's ability to function. *See* AR 24 (rejecting as vague and equivocal the opinion that plaintiff would do best when not drinking); *Trevizo*, 871 F.3d at 678, n.5 (credibility assessment is designed to evaluate the intensity and persistence of symptoms, not to delve into the claimant's character and apparent truthfulness).

### D. Plaintiff's Other Mental Health Treatment Providers

Plaintiff contends the ALJ did not give sufficient weight to the opinion evidence in the record from plaintiff's mental health treatment providers (AR 20-22).

There are progress notes from a number of treatment providers in the record; they do not contain opinions about plaintiff's actual work-related capabilities – yet they do contain significant clinical findings – and those clinical findings are highly supportive of the functional assessments of Dr. Widlan and Mr. Clarke. For example, treatment providers' notes described plaintiff as being guarded, with an anxious mood, a flat or constricted affect, and tangential and perseverative thought. AR 298, 385, 416, 604, 609. In late December 2015, plaintiff was noted to be a "very poor" historian, with "very poor" insight, judgment, and memory recall, poor concentration and eye contact, and "very poor" social engagement, including obliviousness to social cues. *Id.* at 609-14 (further noting poor rapport and relatedness, not acknowledging hand that was outstretched to shake it, not being able to engage in a typical conversation, and appearing to be intermittently "quite preoccupied" as if responding to internal stimuli).

In January 2016, plaintiff was noted to suffer from "multiple somatic symptoms to such a severe degree that they (as well as other aspects of his presentation) are consistent with somatic delusions of a psychotic disorder." AR 627. His concentration, memory, and judgment were

"poor", his insight was "very poor", he was vague and rambling, and he did not know the date or day of the week. *Id.* at 632. There are occasions in the record where plaintiff has seen some improvement (*Id.* at 310, 318, 325, 330-31, 381, 519, 532, 553, 694-95, 712) – yet, adverse symptoms, including anxiousness, agitation, irritability, tangentiality, impaired memory, thought blocking, paranoia, delusions, and constricted or flat affect also have consistently been noted by his therapists (*Id.* at 305, 308, 310, 314-15, 319, 330-31, 333-34, 336-38, 344-45, 348-50, 352-55, 359, 369, 371-72, 375, 377, 379-81, 553-54, 556, 695, 712).

   E. <u>Non-Examining Physicians Michael Brown, Ph.D. and Patricia Kraft, Psy.D.</u>

  Based on his review of the record, in July 2014, non-examining psychologist Michael L. Brown, Ph.D., opined that plaintiff was moderately limited in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek, and perform at a consistent pace. AR 81-82. Dr. Brown opined as well that plaintiff would be markedly limited in his ability to interact appropriately with the general public. *Id.* at 82.

  Dr. Brown further opined that plaintiff retained the functional capacity for sustained concentration, persistence, and pace for a normal workday and workweek, but should have only superficial contact with the general public. *Id.* Plaintiff would be okay, however, with both co-workers and supervision. AR 82. These findings were affirmed by Patricia Kraft, Psy.D., another non-examining psychologist in September 2014, who also based her opinion on a review of the record. *Id.* at 91-93.

  The ALJ gave "great weight" to the opinions of Dr. Brown and Dr. Kraft. AR 24. Plaintiff argues the ALJ erred in this finding – he points out their opinions are inconsistent with

the overall evidence in the record. The Court agrees. The ALJ does not state why he gave their opinions such weight. *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) ("an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, . . . or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion") (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

As noted above, Mr. Clarke found plaintiff was markedly to severely impaired in terms of attention, response to stress, social withdrawal, and negative social behavior. Dr. Widlan also found plaintiff to be markedly impaired in several cognitive and social functioning areas. Both of their findings clearly are at odds with the mostly moderate limitations Drs. Brown and Kraft found. The overall evidence in the record, furthermore, supports the more significant functional limitations found by Dr. Widlan and Mr. Clarke.

The ALJ improperly relied on the testimony of Dr. Pelc to find plaintiff would be able to deal effectively with changes in simple, repetitive types of work and work that involved only occasional interactions with others. Accordingly, the ALJ failed to give sufficient reasons for adopting the opinions of Dr. Brown and Dr. Kraft, and thus erred in relying on them in assessing plaintiff's residual functional capacity.

II. The ALJ's Assessment of Plaintiff's Credibility

The United States Court of Appeals for the Ninth Circuit uses a two-step inquiry for determining whether and to what extent the claimant's testimony about severity of symptoms must be credited:

- First, has the claimant presented objective medical evidence of an impairment that reasonably could produce the pain or other symptoms alleged? The claimant is not required to show that the impairment could reasonably be expected to result in the

exact severity of symptoms that the claimant alleges; the claimant is only required to show that the impairment could reasonably have caused some degree of the symptoms. The claimant is not required to produce objective medical evidence of the specific symptoms (for example, pain) or the severity thereof.

- Second, if the first step is satisfied and there is no evidence of malingering, then the Court asks: has the ALJ provided clear and convincing reasons for rejecting the claimant's testimony about the severity of symptoms?

*Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

Here, the ALJ discounted plaintiff's credibility concerning his limitations based on his "activities, such as his ability to work at a bar, go to a bar four to five times per month, and drive," which the ALJ found were "not consistent with the alleged severity of his limitations." AR 23. A claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting," or if the claimant's activities contradict his or her other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Smolen*, 80 F.3d at 1284 n.7.

The ALJ's reasons for finding plaintiff not credible are not clear and convincing. Regarding plaintiff's going to and/or working at a bar, this activity fails to show he is capable of

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 14

social functioning at a level minimally adequate for a work setting. As for plaintiff's driving, here too the record fails to show he has engaged in that activity to an extent, frequency, or level that would make it transferable to a work setting. AR 219, 260, 577-78. Further, "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Accordingly, the Court declines to uphold the ALJ's adverse credibility determination.

III.     The ALJ's Rejection of the Lay Witness Evidence

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. *Id.* at 512.

Plaintiff resided with his grandmother and she helped him with many aspects of daily living. AR 257-64. Plaintiff's grandmother completed a function report, stating that plaintiff got dizzy at times, threw up a lot, could not stand for long, had difficulty with medications, was unable to sleep most nights, had limitations in seeing, memory, concentration, and understanding, did not handle stress as well, and did not spend time with others. AR 23, 257-64. The ALJ gave only "some weight" to plaintiff's grandmother's statements, explaining:

> Despite the limitations she reported, I note she reported the claimant could drive. The reported severity of the claimant's limitations is not consistent with the claimant's activities, such as driving and going to bars, as the claimant reported to the CDIU investigator. The operation of a vehicle is a very

> dynamic task in a changing environment that is largely influenced by the
> driver. Since the primary role of any motor vehicle operator is the safe control
> of the vehicle within the traffic environment, driving can be considered a
> complex task that requires the making of continuous decisions/judgment calls.
> It also requires social interaction, and the ability to multitask while dealing
> with external and internal stimuli. Driving as an activity is therefore made up
> of strategic decisions (i.e. route-choice, mirror use, vehicle speed, vehicle
> condition, response to emergency vehicles, etc.), maneuvering decisions (i.e.
> reaction to: the behavior of other traffic participants, road hazards,
> pedestrians, animals, etc), and control decisions (i.e., basic vehicle operation,
> radio and/or cellphone operations, etc.), all of which indicate functioning at a
> level in excess of that alleged by the claimant.

AR 23-24.

The ALJ's reasons for discounting his grandmother's statements are not germane reasons. The evidence of plaintiff's going to bars does not show he is minimally capable of social skills necessary in a work setting. Likewise, there is not substantial evidence of the nature, extent and frequency of plaintiff's driving sufficient to show he is functioning at a level higher than he is alleging. And given the ALJ's lengthy description of what driving *generally* involves in terms of abilities and tasks, the ALJ appears to use an erroneous legal standard that the Ninth Circuit has specifically determined to be a misapplication of the law. *See Vertigan*, 260 F.3d at 1050 ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as . . . driving a car . . . does not in any way detract from her credibility as to her overall disability.").

IV.     The ALJ's Step Five Determination

A claimant's residual functional capacity assessment is used at step five of the Commissioner's sequential disability evaluation process to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184, at *2. The ALJ in this case found plaintiff had the RFC:

> **to perform a full range of work at all exertional levels but with the following nonexertional limitations. The claimant is able to understand, remember and carry out simple, routine and repetitive tasks. The**

> **claimant can have no contact with the general public, perform no tandem tasks or tasks involving a cooperative team effort, occasional contact with coworkers and supervisors, and able to work in a predictable and routine workplace setting.**

AR 19. Because the ALJ erred in evaluating the opinion and lay witness evidence in the record, and in assessing plaintiff's credibility, the ALJ's RFC assessment cannot be said to completely and accurately describe all of plaintiff's functional limitations, and therefore cannot be upheld.

At step five, the ALJ must show there are a significant number of jobs in the national economy the claimant is able to perform. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 404.1520(e). The ALJ can do this through testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2000). A step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987).

The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422-23 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations, which forms the RFC determination, "'must be accurate, detailed, and supported by the medical record.'" *Id.* (quoting *Desrosiers*, 846 F.2d at 578 (Pregerson, J., concurring)).

At the initial hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's RFC. AR 45-46. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. *Id.* at 46-47. Based on the vocational expert's testimony, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. AR 25-26. But because the ALJ's RFC assessment

is erroneous, the hypothetical question the ALJ posed – and thus the vocational expert's testimony in response thereto – cannot be said to be supported by substantial evidence. Therefore, the ALJ's reliance on that hypothetical question and the vocational expert's testimony to find plaintiff not disabled at step five also is in error.

VI. <u>Remand for an Award of Benefits</u>

Plaintiff seeks reversal and remand for an award of benefits. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

A direct award of benefits would be warranted if the following conditions are met: First, the record has been fully developed; second, there would be no useful purpose served by conducting further administrative proceedings; third, the ALJ's reasons for rejecting evidence (claimant's testimony or medical opinion) are not legally sufficient; fourth, if the evidence that was rejected by the ALJ were instead given full credit as being true, then the ALJ would be required on remand to find that the claimant is disabled; and fifth, the reviewing court has no serious doubts as to whether the claimant is disabled. *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (amended January 25, 2018); *Revels v. Berryhill,* 874 F.3d 648, 668 (9th Cir. 2017).

If an ALJ makes an error and there is uncertainty and ambiguity in the record, the district court should remand to the agency for further proceedings. *Leon*, *supra* at 1045 (quoting *Treichler v. Comm'r of Social Sec. Admin.,* 775 F.3d 1090, (9th Cir. 2014). If the district court concludes that additional proceedings can remedy the errors that occurred in the original hearing, the case should be remanded for further consideration. *Revels*, *supra* at 668.

Here, the ALJ gave legally insufficient reasons for rejecting the opinion evidence from

Dr. Pelc, Dr. Widlan, and Mr. Clarke, and did not have substantial evidence upon which to reject or discount the treatment notes from plaintiff's other mental health providers. As noted, one of those providers, Mr. Clarke, opined that plaintiff had a marked impairment (defined as an "obvious" impairment *or* "inadequate" functioning) in terms of negative social behavior, response to stress, and anxiety, and a severe impairment (defined as a "significant" disruption *or* "failure" in functioning) in terms of social withdrawal. AR 698.

The marked limitations in cognitive and social functioning assessed by Dr. Widlan are in line with that opinion. AR 287. The medical expert, Dr. Pelc, also testified that when plaintiff was in one of his episodes of increased anxiety or irritability, his functional capabilities would fall in the markedly impaired range as well. AR 66-67. Although Dr. Pelc testified that he could not tell from the record exactly how frequently plaintiff had those episodes, considering the medical record as a whole, the weight of the evidence reveals plaintiff's symptoms were consistent and significant over time, as shown by the findings of his treatment providers.

Given Mr. Clarke's opinion that plaintiff had inadequate or failure in functioning in several major areas involving social behavior and response to stress, and that the ALJ also failed to properly reject the testimony and reporting of both plaintiff and his grandmother, the Court finds no useful purpose would be served by conducting further administrative proceedings. Giving full credit to the improperly rejected evidence, the Court additionally finds the ALJ would be required on remand to find plaintiff to be disabled. Lastly, as the Court has no serious doubts based on the record as to whether plaintiff is in fact disabled, remand for an award of benefits is warranted.

## CONCLUSION

For the foregoing reasons, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is

REMANDED to the Commissioner for an award of benefits in accordance with the findings herein.

Dated this 23rd day of October, 2018.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge

ORDER REVERSING AND REMANDING THE
COMMISSIONER'S DECISION TO DENY BENEFITS - 20